Ordronaux, Commissioner.
[After referring to the facts.]—The case of this petitioner is one which, after a thorough personal examination of him, and inquiry into his antecedents, his heredity and his habitual demeanor, I am satisfied belongs to the borderland of insanity. There are physical paradoxes in his condition which indicate weakness and instability of the brain. Although quite muscular, he yet has a weak pulse, flabby tongue and enlarged pupils, not sensitive. He flushes easily, and appears to be very excitable naturally. There is evidence of passive congestion of brain. He has led a roving life, indicative of instability of purpose, having been in various branches of military and naval life, and is now a dentist, though' *227 recently without occupation, and apparently only drifting from day to day. Has had an uncle and aunt insane.
He presents the basis of a case of latent lunacy with not yet sufficient development to pronounce him insane. But his condition is one, nevertheless, which may be said to oscillate between insanity and imperfect sanity, for any disturbance of health may cause him to cross the boundary. Under the ruling in Anderson v. The State (43 Conn. 514), he could scarcely be convicted of any crime of violence where the offense consists of an act coupled with a particular intent. Nevertheless in a quiet, disciplined mode of life, he would undoubtedly possess the legal competency necessary for the exercise of all his civil rights.
His life maybe said to have been cast in the borderland of insanity. But as no chart has yet been made of the shadowy land that lies between the boundaries of sanity and insanity, we know nothing positively of its extent or the fluctuations which its area at times undergoes. A little more or a little less on this side or that may change the entire character of an individual, and convert him from a responsible into an irresponsible being. Like the limits of riparian ownership on turbulent streams, the borders of sanity may be encroached upon by every flood of passion without yet producing mental aberration; or again, they may be undermined by bodily disease inherited or acquired, until they finally crumble and are swept into the torrent of disorder.
While the law cannot overlook the antecedents of an insane man, in estimating the permanent effects of such conditions upon his recovery, it must still recognize the fact that the operations of nature are beneficent, and generally tend towards restoration, even though barred by insuperable obstacles at every stage of progress towards convalescence. In order to determ *228 ine, then, how far a mind may recover its equilibrium, we must first ascertain how far it has been disordered, temporarily or habitually. In the case before me, I find that the petitioner has been, not so properly speaking, insane, as laboring under a chronic irritation of brain, which led him to irrepressible violence when excited, because of the existing state of mental weakness which such a brain always produces. He was very properly arrested and committed as a lunatic, because his conduct and mental physiognomy were consistent with no other theory than that of insanity. Meanwhile, the quiet and seclusion of the asylum have-restored him to his natural condition, and as he is no longer in a dangerous state mentally, to himself, nor-dangerous to others, and does not need any further-medical treatment, I shall order the following minute to be entered upon the record books of the asylum, as. my judgment in the premises, viz :
“After an examination into the case of Mr. Bod-man A. Brush, I am of opinion that, at the time he was brought to this asylum, he exhibited symptoms of mental disturbance, which, being accompanied with violence, justified his being placed here as an alleged lunatic. As no other symptoms have exhibited themselves since then, and he may have escaped an open-manifestation of insanity, although having an inheritance of that kind, I think he should remain under-observation until, at least, November 1, next, when, if nothing more reveals itself in him, he should be discharged as not insane. ”
The petitioner was accordingly discharged on that day.